IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GEORGES SAGE BERLIN, ) | |
| ) | |
| Petitioner, ) | Civil Action No. 2:23-cv-677 |
| ) | |
| v. ) | |
| ) | Magistrate Judge Patricia L. Dodge |
| SUPERINTENDENT IRWIN, *et al.*, ) | |
| ) | |
| Respondents. ) | |

**MEMORANDUM**

Pending before the Court[1] is a Petition for a Writ of Habeas Corpus (ECF No. 5) filed by Georges Sage Berlin ("Petitioner") under 28 U.S.C. § 2254. Petitioner challenges the judgment of sentence imposed on him by the Court of Common Pleas of Westmoreland County on September 5, 2014, at criminal docket number CP-65-CR-4430-2012. For the reasons below, the Court will deny the petition and will deny a certificate of appealability.

**I.    Relevant Background**

The facts underlying the criminal charges against Petitioner were summarized by the trial court as follows:

> The charges in this case arose from an incident that occurred on or about October 18, 2012 in Murrysville, Westmoreland County. The testimony at trial established that the victim, HW, lived with her two minor daughters on Impala Drive in the municipality of Murrysville in 2012. HW testified that she met [Petitioner] through Facebook, and that they had become romantically involved in the summer of 2012. The relationship was rocky, however, and HW ended the relationship with [Petitioner] in September of 2012. Although [Petitioner] sought reconciliation, HW, was not "sold" on the idea that it was a good decision. Eventually, HW broke off all contact with [Petitioner] because of his troubling behavior toward her.

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case, including entry of a final judgment.

On October 18, 2012, HW was at home getting ready for bed when she heard the doorbell ring. When she reached the door, [Petitioner] asked her to let him into her home, and created a scene. Concerned for her neighbors, HW did allow [Petitioner] to enter her house, but as soon as she did, he pushed her up against the wall and told her repeatedly that they were meant to be together. HW asked [Petitioner] to leave, but he continued to "rant." She was eventually able to move into her living room, hoping to diffuse [sic] the situation, but [Petitioner] continued to insist that she was meant to be his, making little sense, and becoming more agitated. HW asked him repeatedly to leave her home, but [Petitioner] began grabbing at her breasts, pushed her down on the couch and physically and sexually assaulted her. HW fought against [Petitioner] and became hysterical when she felt that she could not breathe. [Petitioner] stopped the assault at that point and apologized for trying to rape her, telling her that he was sorry but that he was crazy over her and that she was his. HW believed that [Petitioner] was then going to leave, but he attacked her again before she was able to call for help. He resumed the assault, and although HW fought against him, [Petitioner] raped and sexually assaulted her.

After the rape, HW was able to get into her bathroom and lock the door behind her. [Petitioner] used a kitchen knife to pry the bathroom door open, and he helped her back into her clothing but would not let her leave the bathroom. He again began speaking in a rambling and a subtly threatening manner. Finally, [Petitioner] told HW that he and his family would "take care" of her ex-husband, and he threatened that if he ever saw her with another man, he would kill her. When [Petitioner] left shortly thereafter, HW believed that it was the early morning hours of October 19, 2012. Her children were still asleep upstairs.

HW testified that she locked all of the doors and went upstairs to her bedroom. She texted a friend, but her friend did not answer the phone. She then located the number for a women's shelter and spoke to a counselor from the Blackburn Center. She testified that she did not call the police because she did not want her neighbors and her children to be awakened. Although she was in considerable pain, she waited until her children were on the bus to school before she went to Forbes Regional Hospital in Monroeville. There, she was examined, a rape kit was performed, and her clothing was collected. She then agreed to meet with Murrysville Police, and gave a written statement. After she left the police station, and as she was driving home, HW noticed that a vehicle was following her. When the car flashed its lights at her to pull over, she did so. [Petitioner] was driving the car, which HW then recognized as being his mother's vehicle, and he rolled down the window as if he wanted to speak with her. HW testified that she was afraid, and so she immediately pulled away and called the police. [Petitioner] continued to follow her, at times pulling in front of her vehicle to block her progress, but HW was eventually able to drive back to the police station.

[Petitioner] called HW's cell phone on numerous occasions and left several voice messages, which HW recorded to a separate medium. HW agreed to return [Petitioner's] phone calls while having the conversation recorded by law

enforcement. In that recorded conversation, [Petitioner] apologized repeatedly to HW for his actions and begged her to forgive him for raping her.

(ECF No. 19-2 at 521-23) (citations omitted).

Petitioner was convicted in a jury trial of two counts each of rape, involuntary deviate sexual intercourse, and indecent assault as well as one count each of aggravated indecent assault, unlawful restraint, and stalking. On September 5, 2014, Petitioner was sentenced to an aggregate term of 17 to 34 years' imprisonment.

Petitioner appealed, but the Superior Court of Pennsylvania affirmed his judgment of sentence on June 30, 2015. *Commonwealth v. Berlin*, 122 A.3d 1149 (Pa. Super. 2015) (unpublished memorandum). Petitioner filed a petition for allowance of appeal in the Supreme Court of Pennsylvania, but the petition was denied on February 29, 2016. *Commonwealth v. Berlin*, 132 A.3d 456 (Pa. 2016). Petitioner did not file a petition for a writ of certiorari with the Supreme Court of the United States. Thus, his judgment of sentence became final under both state and federal law on or around May 30, 2016, when the 90-day period for him to file a petition for allowance of appeal expired. Sup. Ct. R. 13 (time for petitioning); 1 Pa.C.S. § 1908 (omitting from computation of time period the last day where that day is a weekend or holiday); Fed. R. Civ. P. 6(a)(1)(C) (same); 42 Pa. Cons. Stat. § 9545(b)(3); 28 U.S.C. § 2244(d)(1)(A); *Gonzalez v. Thaler*, 565 U.S. 134, 149-50 (2012).

On October 11, 2016, Petitioner filed a petition pursuant to Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-46. The PCRA court ultimately denied the PCRA petition on January 17, 2018. Petitioner filed an appeal from the denial. The Superior Court of

Pennsylvania affirmed the denial of the PCRA petition on February 27, 2019.² *Commonwealth v. Berlin*, 209 A.3d 1099 (Pa. Super. 2019) (unpublished memorandum). Petitioner filed a petition for allowance of appeal, but the Supreme Court of Pennsylvania denied it on July 26, 2019. *Commonwealth v. Berlin*, 216 A.3d 1035 (Pa. 2019).

On July 20, 2020, Petitioner filed a second PCRA petition. On June 7, 2021, Petitioner filed a motion for DNA testing pursuant to the PCRA. On September 26, 2022, the PCRA court denied both the petition and the motion as untimely and otherwise failing to meet the threshold requirements of the PCRA.³ Petitioner did not appeal these denials.

Petitioner filed the instant petition for writ of habeas corpus on April 19, 2023, wherein he raises four grounds for relief. (ECF No. 1 at 16). Respondents filed an answer (ECF No. 19). Petitioner did not file a reply.

---

² While the Superior Court affirmed the PCRA court's order, it vacated the portion of Petitioner's judgment of sentence that required him to register as a lifetime sexual offender under the Sexual Offender Registration and Notification Act and remanded with instructions that the trial court should instruct Petitioner on his proper reporting requirements under Megan's Law III.

³ Of note, the PCRA court found: "DNA testing was available at the time of [Petitioner's] trial in 2014 and, in fact, was carried out." (ECF No. 19-2 at 579.) The PCRA court further explained, "a review of the record reveals that [Petitioner] was convicted of crimes against a woman with whom he had a relationship and had known for over six months at the time of the criminal incident. He was well familiar to her so that his identity was not in question. Additional DNA evidence would not serve to advance his defense on this point and neither would the absence of additional DNA evidence contribute to his defense. Additionally, the defense proposed by [Petitioner] and rejected by the jury was that the victim consented to sexual activity with [Petitioner.] Again, on this point, additional DNA evidence would not serve to advance his defense and neither would the absence of additional DNA evidence contribute to his defense. Finally, as stated above, evidence that [Petitioner's] DNA was found in a mixture with the victim's bodily fluids was presented to the jury for their consideration. There is no reasonable possibility that DNA testing would produce exculpatory evidence which would establish that [Petitioner] was actually innocent." (*Id.* at 581) (footnote omitted).

4

## II.   Discussion

### A.   Jurisdiction

The Court has jurisdiction under 28 U.S.C. § 2254, the federal habeas statute applicable to prisoners in custody pursuant to a state court judgment. This statute permits a federal court to grant a state prisoner a writ of habeas corpus "on the ground that he or she is in custody in violation of the Constitution…of the United States." 28 U.S.C. § 2254(a). Errors of state law are not cognizable. *Id.*; *see, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). It is Petitioner's burden to prove that he is entitled to the writ. *See, e.g.*, *Vickers v. Superintendent Graterford SCI*, 858 F.3d 841, 848-49 (3d Cir. 2017).

### B.   Grounds One and Two

In Grounds One and Two, Petitioner appears to raise claims of PCRA court error. In Ground One, he states, "Requested DNA testing by motion PCRA for any and all evidence recovered, siezed [sic] or obtained or not obtained by law enforcement." (ECF No. 5 at 5.) In Ground Two, he states, "Request through PCRA petition cell phone records, recorded and logged by MPD Detective Delvin, which were never examined or authenticated by an expert." (*Id.* at 7.)

Alleged errors made during the PCRA proceeding are not cognizable in a federal habeas action. As the Court of Appeals has explained:

> [T]he federal role in reviewing an application for habeas corpus is limited to evaluating what occurred in the state or federal proceedings that actually led to the petitioner's conviction; what occurred in the petitioner's collateral proceeding does not enter into the habeas calculation.

*Hassine v. Zimmerman*, 160 F.3d 941, 954 (3d Cir. 1998) (internal citations omitted) *See also Lambert v. Blackwell*, 387 F.3d 210, 247 (3d Cir. 2004) ("[A]lleged errors in collateral proceedings are not a proper basis for habeas relief from the original conviction.").

Accordingly, Petitioner cannot receive to habeas relief on these grounds.

C.     Grounds Three and Four

In Grounds Three and Four, Petitioner alleges errors concerning expert testimony at his trial. (ECF No. 5 at 8-11.) In Ground Three, he states, "Failure to call expert forensic DNA scientist to testify at trial but was falsely and fraudulently added to trial transcripts proving fraudulent testimony." (*Id.* at 8.) In Ground Four, Petitioner states, "withheld testimony of expert forensic DNA scientist report is 'Brady material' and is favorable to defense." (*Id.* at 10.)[4]

Respondents assert, among other things, that Petitioner's claims are time-barred under the applicable one-year statute of limitations, which was enacted by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). (ECF No. 19 ¶¶ 23-24.) Petitioner has not refuted or otherwise responded to this argument.

In 1996, Congress made significant amendments to the federal habeas statutes with the enactment of AEDPA. Among other things, AEDPA set a one-year limitations period for filing a federal habeas petition. *Pace v. DiGuglielmo*, 544 U.S. 408, 410 (2005). AEDPA's one-year statute of limitations is codified at 28 U.S.C. § 2244(d). The date on which AEDPA's limitations period commences is determined on a claim-by-claim basis. *Fielder v. Varner*, 379 F.3d 113, 118-22 (3d Cir. 2004).

AEDPA also provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2). A matter is "pending" for § 2244(d)(2) purposes "as long as the ordinary state

---

[4] Petitioner does not provide a date on which he asserts that this claim accrued; however, nothing in the petition or the record indicates that it did so recently. Indeed, the Court notes that the affidavits submitted by Petitioner from Jacquet Woods (ECF No. 23) and Wesley Tucker (ECF No. 22 at 5) indicate that Petitioner received notice of allegedly exculpatory DNA test results in 2014.

collateral review process is 'in continuance' .... In other words, until the application has achieved final resolution through the State's post-conviction procedures[.]" *Carey v. Saffold*, 536 U.S. 214, 219-20 (2002).

In this case, the statute of limitations for Petitioner's claims began to run on the date his judgment of sentence became final, in accordance with § 2244(d)(1)(A). As discussed above, Petitioner's judgment of sentence became final on May 30, 2016. The one-year limitations period for each of Petitioner's claims began to run on that date.

Petitioner filed his first PCRA petition 134 days later, on October 11, 2016. Under § 2244(d)(2), this first PCRA proceeding statutorily tolled ADEPA's limitations period from until July 26, 2019, the date the Pennsylvania Supreme Court denied his petition for allowance of appeal. *Lawrence v. Florida*, 549 U.S. 327, 331-36 (2007) (a petitioner is not entitled to statutory tolling for the period available to petition for writ of certiorari to the United States Supreme Court following state collateral review); *Swartz v. Meyers*, 204 F.3d 417, 419-20 (3d Cir. 2000) (same).

AEDPA's limitations period began to run again the next day, on July 27, 2019.[5] At that point, 134 days had already expired from the limitations period. Petitioner thus had 231 more days—until on or around March 16, 2020—to file timely claims in a federal habeas petition. As explained above, the instant petition was filed on April 19, 2023, more than three years later. Thus, Petitioner's trial-related claims are untimely, and he is not entitled to habeas relief on these claims.[6]

---

[5] The untimely second PCRA petition and the untimely motion for DNA testing were not "properly filed" for § 2244(d)(2) purposes and therefore did not toll AEDPA's statute of limitations. *Pace v. DiGuglielmo*, 544 U.S. 408, 417 (2005); *Satterfield v. Johnson*, 434 F.3d 185, 192 (3d Cir. 2006).

[6] Petitioner has submitted additional information that he wants the Court to consider (ECF Nos. 14, 17, 18, 22-25, and 27), including but not limited to the affidavits from Jacquet Woods (ECF No. 23) and Wesley Tucker (ECF No. 22 at 5) referenced *infra*. "A petitioner may not simply attach documents to [his] habeas petition and ask the district court to consider them. Rather, *Footnote continued on next page…*

### III.     Certificate of Appealability

AEDPA codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. It provides that "[a] certificate of appealability may issue…only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it

---

evidence relied upon by the petitioner that is not otherwise part of the state court record must be properly admitted into the record before the district court." *Wilcott v. Wilson*, 2010 WL 582367, *5 (W.D. Pa. Feb. 15, 2010).

     To the extent that Petitioner is relying on evidence that was not previously introduced into the record in a state proceeding to establish the merits of any of his claim, he first must overcome the bar to evidentiary hearings posed by 28 U.S.C. 2254(e)(2), before the Court could consider that evidence. *Williams v. Sup't Mahanoy SCI*, 45 F.4th 713, 724 (3d Cir. 2022) (AEDPA's prohibition is not limited to formal evidentiary hearings and applies whenever the petitioner wants to expand the record beyond that developed in state court) (citing *Shinn v. Ramirez*, 596 U.S. 366, 388 (2022), and *Holland v. Jackson*, 542 U.S. 649, 653 (2004)). Because Petitioner has not satisfied either of the two limited scenarios set forth in § 2254(e)(2) necessary to permit the Court to conduct a hearing on the merits on any claim, he cannot introduce into the record any new evidence to support them. And, in any event, the Court has already explained that it will not consider the merits of any of Petitioner's claims because Grounds One and Two are not cognizable

     To the extent that Petitioner is relying on any new evidence to establish a "gateway" claim of actual innocence to avoid AEDPA's one-year statute of limitations, that effort fails too. Section 2254(e)(2)'s prohibition on evidentiary hearings does not apply to an evaluation of whether to conduct an evidentiary hearing on a gateway actual innocence claim under *McQuiggin v. Perkins*, 569 U.S. 383 (2013) that is asserted to avoid AEDPA's statute of limitations. *Cristin v. Brennan*, 281 F.3d 404, 413 (3d Cir. 2002), called into question by *Williams*, 45 F.4th at 723 ("*Shinn* suggests that '[t]here are good reasons to doubt' [the Court of Appeals'] reading of the word 'claim' in *Cristin*, [but] it [did] not abrogate [*Cristin*'s] holding that, generally, AEDPA's text does not forbid federal courts from developing the facts needed to excuse a procedural default [or overcome AEDPA's one-year statute of limitations].") In that circumstance, the decision whether to do so is a discretionary one. *Id.* Here, there is no basis for the Court to exercise that discretion. None of the alleged new evidence proffered by Petitioner appears to be offered to establish a gateway claim of actual innocence under *McQuiggin*. To the extent that he is offering any of his evidence for that purpose, it falls far below the type of evidence that would demonstrate that he is factually innocent of the crimes at issue. Further, as set forth *infra*, to the extent Petitioner offers the affidavits from Woods and Tucker to overcome the statute of limitations, these documents contradict a recent accrual of the claims.

8

debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Applying that standard here, jurists of reason would not find it debatable whether Petitioner's claims should be denied. Thus, a certificate of appealability will be denied with respect to his claims.

### IV. Conclusion

For these reasons, the Court will deny the petition and will deny a certificate of appealability.

An appropriate Order follows.

Date:  September 27, 2024                                  /s/ Patricia L. Dodge
                                                           PATRICIA L. DODGE
                                                           United States Magistrate Judge